**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 16-cv-00482-NYW

BALL DYNAMICS INTERNATIONAL, LLC,
a Colorado limited liability company,

      Plaintiff,

v.

DEBORAH G. SAUNDERS, d/b/a WIZARD OF PAWS, aka DEBORAH SAUNDERS aka DR.
DEBBIE GROSS aka DR. DEBBIE GROSS SAUNDERS, an Individual,
MARTHA MCCORMICK, an Individual, and
TOTO FIT, LLC, a Connecticut limited liability company,

      Defendants.

---

**MEMORANDUM OPINION AND ORDER**

---

Magistrate Judge Nina Y. Wang

      This matter is before the court on Plaintiff Ball Dynamics International, LLC's ("BDI" or

"Plaintiff") Motion for a Temporary Restraining Order ("Motion for TRO"). [#41, filed October

17, 2016]. The undersigned Magistrate Judge disposes of the Motion for TRO pursuant to her

authority under 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, and D.C.COLO.LCivR 72.2. *See* [#15].

The court has considered the Motion for TRO and associated briefing, the applicable case law,

and the comments offered by counsel during the October 21, 2016 Motion Hearing. For the

following reasons, the Motion for TRO is **GRANTED IN PART and DENIED IN PART**.

**PROCEDURAL BACKGROUND**

      BDI initiated this civil action on February 26, 2016, to assert six common law claims for

breach of contract, bad faith and unfair dealing, unjust enrichment, unfair

competition/misappropriation of trade secrets, intentional interference with existing and prospective business relations, and civil conspiracy. [#1 at 16-22]. The action arises out of an ultimately unsuccessful business relationship between BDI and Defendant Deborah G. Saunders for services related to BDI's FitPAWS brand. *See* [#1; #22]. On April 18, 2016, Defendants Deborah G. Saunders, d/b/a Wizard of Paws, a/k/a Deborah Saunders, a/k/a Dr. Debbie Gross, a/k/a Dr. Debbie Saunders ("Dr. Gross"), Martha McCormick, and Toto Fit, LLC (collectively, "Defendants") filed an Answer and the following counterclaims: intentional misrepresentation; negligent misrepresentation; tortious interference with prospective business relations; and breach of the covenant of good faith and fair dealing. [#16]. BDI filed an Answer to Defendants' counterclaims on May 2, 2016. [#20].

On May 3, 2016, the court held a Scheduling Conference at which it set certain pre-trial dates and deadlines, including a discovery deadline of November 4, 2016 and a dispositive motions deadline of December 16, 2016. [#21; #22]. On August 17, 2016, Dr. Gross filed a Motion for Partial Judgment on the Pleadings. [#29]. BDI and Dr. Gross finished briefing the Motion for Partial Judgment on the Pleadings on September 26, 2016. *See* [#39; #40].

BDI filed the Motion for TRO on October 17, 2016. [#41]. In the ensuing twenty-four hours, Defendants filed a Response [#43] and BDI filed a Reply [#44], followed by an unopposed First Amended Complaint. *See* [#46]. The First Amended Complaint ("FAC") adds the following claims: violation of the Colorado Consumer Protection Act ("CCPA"), C.R.S. § 6-1-101, *et seq.*; violation of the Anti-Cybersquatting Consumer Protection Act, ("ACPA"), 15 U.S.C. § 1125(d); violation of the Lanham Act, 15 U.S.C. 1125(a); and trademark infringement in violation of 15 U.S.C. § 1114. The court held argument on the Motion for TRO on October

2

21, 2016, at which time Defendants tendered the Declaration of Jonathan Hochman. *See* [#48 at

48-2].  The court took the Motion under advisement and instructed Plaintiff to respond to the

Hochman Declaration on or before October 28, 2016.  Plaintiff filed a timely Response on

October 27, 2016.  *See* [#51]

## FACTUAL HISTORY

The following facts are derived from the Complaint, the Motion for TRO, and the

Response thereto.  BDI launched the FitPAWS brand in 2009.  The brand is specifically

designed as "canine conditioning and rehabilitation products."  [#41 at 5].  On June 1, 2010, BDI

registered the trademark "FitPAWS" with the United States Patent and Trademark Office

("USPTO") for a variety of classes of goods and services.  BDI lists its marks as follows:

> June 1, 2010, Reg. No. 3,797,098: Physical rehabilitation and physical therapy
> equipment for animals, namely, physical rehabilitation and physical therapy balls,
> balance apparatus, agility training equipment, strength training equipment, and
> training harnesses all used for physical rehabilitation and physical therapy
> animals.

> June 1, 2010, Reg. No. 3,797,098: Exercise and conditioning equipment for
> animals, namely, exercise and conditioning balls, balance apparatus, agility
> training equipment, strength training equipment, and training harnesses, all used
> for exercise and physical conditioning of animals.[1]

> August 28, 2012, Reg. No. 4,199,563: Printed instructional, educational and
> teaching materials in the fields of physical therapy, rehabilitation, exercise,
> conditioning and training for animals.

> August 28, 2012, Reg. No. 4,199,564: Educational services, namely, conducting
> live classes, seminars, conferences and workshops in the fields of physical
> therapy, rehabilitation, exercise, conditioning and training for animals and
> distribution of printed materials in connection therewith in hard copy or electronic
> format on the same topics.

---

[1] Though listed as a separate registration, this refers to the same registration as above, but for a
different class of goods.

> December 9, 2014, Reg. No. 4,653,151: Digital media, namely, digital video discs, digital versatile discs, downloadable audio and video recordings, DVDs, and high definition digital discs featuring physical therapy, rehabilitation, exercise, conditioning and training programs for animals.

[#41 at 5 (citing #41-1)].  BDI asserts that mark Reg. No. 3,797,098 has achieved "incontestable" status and thus cannot be challenged in litigation.  [*Id.* at 6].[2]

BDI has maintained and operated the website www.fitpawsusa.com from November 2009 to present.  From October 2009 through November 2015, "Wizard of Paws," a limited liability company controlled by Dr. Gross, was a dealer of FitPAWS products in the United States.  On or about March 1, 2011, Dr. Gross entered into an Independent Contractor Consulting Agreement with BDI to provide consulting services (the "Agreement").  [#1 at ¶ 20; #1-1].  Pursuant to the Agreement, Dr. Gross served as a paid independent contractor and acted as a spokesperson for BDI and the FitPAWS brand.  [#41 at 6].

On October 13, 2015, Dr. Gross and Ms. McCormick organized Defendant Toto Fit, LLC ("TotoFit").  [#1 at ¶ 43].  On or around November 19, 2015, Dr. Gross ended her relationship with BDI.  [*Id.* (citing #41-3)]. The termination and duration of Dr. Gross and BDI's Agreement are in dispute in this action.  [#41 at 6]; *see also* [#1 at ¶¶ 70-76].  On or about November 19, 2015, TotoFit filed a federal trademark application for TotoFit for goods BDI contends are identical to FitPAWS's products; the application specifies September 17, 2015 as the date the goods were first used in commerce.  [#1 at ¶ 48].  Following a round of correspondence with Dr. Gross and Ms. McCormick about the Parties' obligations under the Agreement, BDI commenced

---

[2] In their Response, Defendants generally contest BDI's claim of trade secrets, but do not address the validity of the mark protected by Reg. No. 3,797,098.  *See* [#43 at 4 ("[t]he email [between Defendant Gross and Defendant McCormick] further demonstrates to this Court the utter lack of trade secrets, considering Plaintiff is providing this type of information to anyone included in an email chain.")].

an effort to enforce its legal rights under the Agreement.  *See* [#41 at 6]; *see also* [#1 at ¶¶ 49-55].

By January 1, 2016, Ms. McCormick and TotoFit had purchased the following domain names: fitpaws.info; fitpaws.net; fitpaws.org; fitpawsusa.biz; fitpawsusa.info; fitpawsusa.net; fitpawsusa.org; and fitpawsusa.training (collectively, "FitPAWS URLs").  [#41 at 6-7 (citing #41-2)].  At the October 20, 2016 Motion Hearing, the Parties informed the court that a total of eleven URLs had been disclosed.  BDI asserts that it did not authorize or otherwise approve Defendants' use of its trademark for the FitPAWS URLs.

### LEGAL STANDARD

Federal Rule of Civil Procedure 65 authorizes the court to enter preliminary injunctions and issue temporary restraining orders.  Fed. R. Civ. P. 65(a), (b).  "When the opposing party actually receives notice of the application for a restraining order, the procedure that is followed does not differ functionally from that on an application for a preliminary injunction and the proceeding is not subject to any special requirements."  11A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure: Civil* § 2951 (3d ed.)  Because Defendants have notice of the Motion for TRO, and, indeed, filed a Response, the court treats the Motion for TRO as a motion for preliminary injunction.

A preliminary injunction is considered an extraordinary remedy.  *See, e.g., Winter v. Nat'l Res. Defense Council, Inc.*, 555 U.S. 7, 24 (2008) (citation omitted).  Thus, the right to such relief must be "clear and unequivocal."  *Petrella v. Brownback*, 787 F.3d 1242, 1256 (10th Cir. 2015) (quoting *Beltronics USA, Inc. v. Midwest Inventory Distrib., LLC*, 562 F.3d 1067, 1070 (10th Cir. 2009)).  A party seeking preliminary injunctive relief must satisfy four factors: a

likelihood of success on the merits; a likelihood that the movant will suffer irreparable harm in the absence of preliminary relief; that the balance of equities tips in the movant's favor; and that the injunction is in the public interest. *Id.* at 1257.

The primary goal of a preliminary injunction is to preserve the pre-trial status quo. "Status quo" is defined to be the last uncontested status between the parties that preceded the controversy until the outcome of the final hearing. *See Schrier v. University of Colorado*, 427 F.3d 1253, 1260 (10th Cir. 2005). Therefore, courts view the following types of injunctions with caution: (1) preliminary injunctions that alter the status quo; (2) preliminary injunctions that require the nonmoving party to take affirmative action ("mandatory preliminary injunctions"); and (3) preliminary injunctions that give the movant all the relief it would be entitled to if it prevailed in a full trial. *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1208 (10th Cir. 2009) (citing *O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 975 (10th Cir. 2004) (per curiam), *affirmed,* 546 U.S. 418, 126 S.Ct. 1211, 163 L.Ed.2d 1017 (2006)). Movants who seek a disfavored injunction must demonstrate a *substantial* likelihood of success on the merits, as well as a heightened showing of the other three elements. *Id.* (citing *O Centro*, 389 F.3d at 980).[3] *See also Fundamentalist Church of Jesus Christ of Latter–Day Saints v. Horne*, 698 F.3d 1295, 1301 (10th Cir. 2012) (the movant must show that the factors "weigh

---

[3] *Cf. Walmer v. United States Dep't of Defense*, 52 F.3d 851, 854 (10th Cir. 1995) (holding, under a "modified likelihood of success" requirement, if the movant has satisfied his or her burden with respect to the irreparable injury, balance of equities, and public interest factors, "the movant may establish likelihood of success by showing questions going to the merits so serious, substantial, difficult and doubtful, as to make the issues ripe for litigation and deserving of more deliberate investigation."). *See Colorado Rail Passenger Ass'n v. Federal Transit Admin.*, Nos. 09–cv–01135–REB, 10–cv–00462–REB, 2010 WL 749790 (D. Colo. Mar. 3, 2010) ("'assuming' the *Walmer* standard is still viable.").

heavily and compellingly" in his or her favor).  The court may grant a disfavored injunction only

if the moving party demonstrates that the "exigencies of the case require extraordinary interim

relief," and satisfies the heightened burden.  *RoDa Drilling*, 552 F.3d at 1209 (citing *O Centro*,

389 F.3d at 978).  "The determination of whether an injunction is mandatory as opposed to

prohibitory can be vexing," but the United States Court of Appeals for the Tenth Circuit ("Tenth

Circuit") has explained that a mandatory injunction affirmatively requires the non-moving party

to act in a particular way.  *Schrier*, 427 F.3d at 1261.  Whether to issue a preliminary injunction

lies in the sound discretion of the trial court.  *See id.* at 1208 (citations omitted).

### ANALYSIS

BDI asserts that Defendants "must be restrained to preserve the status quo and protect

against further irreparable injury."  As discussed above, the status quo is "the last uncontested

status between the parties which preceded the controversy until the outcome of the final

hearing."  *Dominion Video Satellite, Inc. v. EchoStar Satellite Corp.*, 269 F.3d 1149, 1155 (10th

Cir. 2001) (quoting *SCFC ILC, Inc. v. Visa, USA Inc.*, 936 F.2d 1096, 1100, n.8 (10th Cir.

1991)).  In determining the status quo for preliminary injunctions, the court "looks to the reality

of the existing status and relationship between the parties and not solely to the parties' legal

rights."  *Id.*

BDI asserts that the "last uncontested status between that parties [sic] which preceded the

controversy would be prior to the 'launch' of the TotoFit.com website and its Facebook page."

[#41 at 9].  Defendants frame the Parties' status quo as "Plaintiff is operating its business and

Defendants are operating their business."  [#43 at 5].  The court is not fully persuaded by either

Party's assertion, and finds, rather, that the status quo dates to on or around November 19, 2015,

when Dr. Gross terminated the Agreement.  Based on the Complaint, Dr. Gross and Ms. McCormick had organized TotoFit and launched the associated Facebook page by November 19, 2015.  *See* [#1 at ¶¶ 42, 43].  Were the court to date the status quo to "prior to the 'launch'" of TotoFit, it would effectively rule on the merits of the bulk, if not the entirety, of BDI's claims.  A preliminary injunction is not intended to produce such an outcome or disposition.

The court now turns to the factors identified above, and begins by noting that BDI seeks a mandatory injunction because it would have the court compel Defendants to take certain action. BDI also seeks a prohibitory injunction because it would have the court prohibit Defendants from taking certain actions.  Therefore, with respect to requests such as, and for example, compelling Defendants to publish a communication in the trade press informing the public that they directed FitPAWS internet traffic to themselves, BDI must satisfy the heightened showing required in this Circuit.  In the end, however, under either standard, this court reaches the same conclusion.

## I.     Relief Sought

The court paraphrases BDI's request for injunctive relief as follows.  First, Plaintiff asks the court to restrict Defendants from: using the "FitPAWS" or "FitPAWSUSA" marks; using any "unauthorized colorable imitation of the 'FitPAWS' or 'FITPAWSUSA' marks"; engaging in false representations, descriptions, or designation of origin with respect to these marks; engaging in activity that constitutes a violation of the CCPA, the ACCPA, and the Lanham Act; operating the website located at www.totofit.com pending a trial on the merits of this action; and offering products for sale at the website located at www.totofit.com.  [#41 at 2-3].  Next, Plaintiff asks the court to order Defendants to:  provide  a  list  of  all  customers,  and  accompanying  contact

8

information, who purchased products from www.totofit.com; publish "a communication in the trade press," in a form acceptable to Plaintiff, that notifies the public that "Defendants directed FitPAWS internet traffic [sic] to the Defendants," and that Defendants' products are not affiliated with FitPAWS; provide to BDI a list identifying "each and every domain, URL, and/or website owned, managed or controlled by any of the Defendants"; verify under oath that no domain, URL and/or website controlled by Defendants "points/directs anyone to a website owned, managed or controlled by any of the Defendants"; and submit their Information and Technology and social media presence and activity to BDI for an audit at Defendants' expense. [*Id.* at 3-4].

In support of this requested relief, BDI asserts that it never authorized or approved Defendants to use its trademarks for FitPAWS URLs, Defendants never indicated through disclosures or discovery responses that their FitPAWS URLs existed, and BDI did not suspect that the FitPAWS URLs existed. [#41 at 7]. BDI contends that on October 14, 2016, it discovered eight URLs containing BDI's FitPAWS and FitPAWSUSA marks, and learned that five of these URLs had "redirected" public internet traffic to Defendants' www.totofit.com website. [*Id.* (citing #41-4; #41-5)]. BDI asserts its reasonable belief that FitPAWS customers have been "unknowingly purchasing TotoFit products," and that consumers "have been confused by an apparent association between FitPAWS and TotoFit—an association that does not exist." [*Id.* at 8]. Counsel for BDI informed counsel for Defendants of the eight URLs; counsel for Defendants advised on October 16, 2016 that the URLs had been "shut down." [*Id.*]

Defendants respond that the Motion for TRO is unnecessary because the URLs complained of herein have been shut down, they do not oppose Plaintiff amending its Complaint

9

to add facts pertinent to the URLs, and they will not object to additional discovery. [#43 at 2].

Defendants also allude to alleged discovery violations perpetuated by Plaintiff, but this court

declines to address those arguments as they are not germane to the instant Motion.

## II.    The Parties' Arguments

### A.  Success on the Merits

BDI asserts that it is "likely to prevail" on its claims that Defendants are liable for

trademark infringement and have violated the Lanham Act and ACPA. [#41 at 10-12]. Plaintiff

did not assert these claims in its Complaint, but rather introduced them in the FAC that it filed

after the Motion for TRO.[4]  *See* [#43; #46].  Defendants do not provide a response to Plaintiff's

argument regarding its likelihood of success on these claims, other than to assert that "[m]any of

Plaintiff's allegations in the Motion fail to contain any citations to exhibits." [#43 at 3].

#### 1.   Trademark Infringement

In the FAC, Plaintiff asserts that Defendants are liable for trademark infringement under

15 U.S.C. § 1114.  "[I]n order to establish trademark infringement, a plaintiff must prove the

validity of the mark it seeks to protect and must also prove that the use of a similar mark by

defendant is 'likely to cause confusion in the market place concerning the source of the different

products.'"  *USA Network v. Gannett Co., Inc.*, 584 F. Supp. 195, 198 (D. Colo.

1984) (quoting *Beer Nuts, Inc. v. Clover Club Foods Co.*, 711 F.2d 934, 940 (10th Cir. 1983)).

As to the first factor, the registration of a mark is prima facie evidence of the owner's

exclusive right to use the mark as registered in connection with services stated in the registration.

---

[4] The court considers the challenge of granting a preliminary injunction due in part to a party's likelihood of success on the merits, where the likelihood of success pertains to claims that did not exist at the time the party moved for the injunction.  In light of the court's ultimate disposition of the Motion for TRO, it declines to pass on this precise question.

*USA Network*, 584 F. Supp. at 198 (citing 15 U.S.C. §§ 1057(b) and 1115(a)).  As to the second

factor, "[c]onfusion occurs when consumers make an incorrect mental association between the

involved commercial products or their producers."  *John Allan Co. v. Craig Allen Co.*, 540 F.3d

1133, 1138 (10th Cir. 2008) (quoting *Jordache Enter. v. Hogg Wyld, Ltd.*, 828 F.2d 1482, 1484

(10th Cir. 1987)).  Whether the use of a mark will result in likelihood of confusion is a question

of fact.  *Id.* (citation omitted).   Courts examine six non-exhaustive factors to determine

likelihood of confusion: (1) the degree of similarity between the marks; (2) the intent of the

alleged infringer in adopting the mark; (3) evidence of actual confusion; (4) similarity of

products and manner of marketing; (5) the degree of care likely to be exercised by purchasers;

and (6) the strength or weakness of the marks.  *Id.* (internal quotations omitted).  "The party

alleging infringement has the burden of proving likelihood of confusion."  *Id.  See also KP*

*Permanent Make–Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 118 (2004) ("It is

evident…that § 1115(b) places a burden of proving likelihood of confusion (that is,

infringement) on the party charging infringement even when relying on an incontestable

registration...").

BDI asserts only that its FitPAWS mark has been registered with the USPTO for multiple

classes of goods and services, one mark has attained "incontestable" status, and that Defendants'

use of the FitPAWS mark has caused confusion in the marketplace.  [#41 at 10].  Plaintiff has

submitted the registration of the word mark, "FitPAWS," which is live on the Principal

Trademark Register since June 1, 2010, and pertains to physical rehabilitation and physical

therapy equipment for animals and exercise and conditioning equipment for animals.  [#41-1].

While Defendants generally appear to contest the validity of the trademark, they fail to

specifically raise a validity contention in their Response to the Motion for TRO.  Therefore, for

the sole purpose of considering the instant Motion, the court concludes that Plaintiff is likely to

prevail that the mark is valid.

However, BDI offers no argument or accompanying support for the second inquiry

regarding confusion.  Plaintiff has the burden to demonstrate confusion, and in this Circuit, the

likelihood of confusion is a question of fact.  *See General Motors Corp. v. Urban Gorilla, LLC*,

500 F.3d 1222, 1227 (10th Cir. 2007).  The Parties presented no evidence in their papers or at the

hearing to establish confusion among consumers.   At the hearing, Defendants offered a

Declaration of Jonathan Hochman, who attested that "[t]here is no evidence presented in the

Motion that anybody in the market was made aware of the [] URLs."  [#48-2 at ¶ 7].  Plaintiff

urges the court to ignore Mr. Hochman's statements.  [#51].  The court need not credit Mr.

Hochman's statement to find that Plaintiff has failed to carry its burden of offering some

evidence that it is likely to succeed on the merits regarding confusion.  There is no evidence of

actual confusion, such as a third-party statement that she or he reached these URLs inadvertently

while seeking Plaintiff's products.  To succeed on the Motion for TRO, Plaintiff must offer more

than bare allegations.  *See Whitington v. Ortiz,* 307 F. App'x 179, 194–96 (10th Cir. 2009);

*Ogden v. Sedgwick Cty. Dist. Attorney's Office*, No. 11–3124–SAC, 2012 WL 235575, at *1 (D.

Kan. Jan. 25, 2012) ("Plaintiff has the burden to establish his right to such [preliminary

injunctive] relief by clear proof, and he may not rest on bare allegations.").   Furthermore,

Plaintiff carries a heightened burden because it seeks a disfavored injunction.  BDI does not

acknowledge this distinction, and has not demonstrated a *substantial* likelihood of success on the

merits of this claim.

2.   False Designation of Origin

BDI next asserts that Defendants are liable for Trademark Infringement and False

Designation of Origin under 15 U.S.C. § 1125(a).  "Section 43(a) of the Lanham Act, prohibiting

the use of false designations of origin, protects against service mark infringement even if the

mark has not been federally registered." *Donchez v. Coors Brewing Co.*, 392 F.3d 1211, 1215

(10th Cir. 2004) (quotation marks and citation omitted). In order to prevail on an action under §

43(a), a plaintiff must establish (1) the mark is protectable; and (2) "the defendant's use of an

identical or similar mark is likely to cause confusion among consumers." *Id.* at 1215 (brackets,

quotation marks, and citation omitted).   "To be protectable, a mark must be capable of

distinguishing the products or services it marks from those of others."  *Id.* at 1216 (brackets,

quotation marks, and citation omitted).   The test examining the "likelihood of confusion"

applicable      to      trademark      infringement      applies      equally      to      BDI's      claim

of false designation of origin in violation of 15 U.S.C. § 1125(a).

Again, for the purpose of the instant Motion, the court concludes that Plaintiff has

established that the mark is protected.   But BDI again fails to demonstrate a substantial

likelihood of success on the merits because there is insufficient evidence of confusion among

consumers.   Plaintiff states only, "Defendants' marketing and sales of canine products to

FitPAWS customers in an industry in which the 'FitPAWS' and 'FitPAWSUSA' marks have

been synonymous with BDI/FitPAWS for over seven years and use of BDI's 'FitPAWS' and

'FitPAWSUSA' marks in the process…is likely to continue to cause confusion…" [#41 at 11].

*Cf. Electrology Laboratory, Inc. v. Kunze*, 169 F.Supp.3d 1119, 1157 (D. Colo. 2016) (citing

evidence of nonparties' confusion resulting from defendant's intentional use of plaintiff's

product as his own).  There is no information in the record regarding the size of the market, the sophistication of the consumers, or the number of consumers who even had access to the offending URLs.  The court has received insufficient evidence (indeed, no evidence) at this juncture supporting Plaintiff's claim for violation of 15 U.S.C. § 1125(a), and thus I cannot conclude that BDI has a likelihood, let alone a substantial likelihood, of prevailing on the merits of this claim.

### 3.  ACPA

Finally, in support of the Motion for TRO, BDI asserts a likelihood of success on the merits of its ACPA claim.[5]  Pursuant to the ACPA, a cybersquatter is potentially liable to the owner of a protected mark if that person:

> (i) has a bad faith intent to profit from the mark…; and
> (ii) registers, traffics in, or uses a domain name that-
>> (I) in the case of a mark that is distinctive…, is identical or confusingly similar to that mark;
>> (II) in the case of a famous mark…, is identical or confusingly similar to or dilutive of that mark; or
>> (III) is a trademark, word, or name protected by reason of section 706 of Title 18 or section 220506 of Title 36.

15 U.S.C. § 1125(d)(1)(A).  Accordingly, BDI must demonstrate: (1) its mark is protected as specified in the statute and was so protected at the time of registration of its domain name; (2) the FitPAWS URLs are identical or confusingly similar to the BDI's mark; and (3) Defendants used or registered the FitPAWS URLs with bad faith intent to profit.  *Cleary Building Corp.*, 674 F.Supp.2d at 1263 (citing *Utah Lighthouse Ministry v. Foundation for Apologetic Info. &*

---

[5] "The ACPA was enacted in 1999 in response to concerns over the proliferation of cybersquatting-the Internet version of a land grab." *Cleary Building Corp. v. David A. Dame, Inc.*, 674 F.Supp.2d 1257, 1263 (D. Colo. 2009) (quoting *Virtual Works, Inc. v. Volkswagen of America, Inc.,* 238 F.3d 264, 267 (4th Cir. 2001)).

*Res.,* 527 F.3d 1045, 1057 (10th Cir. 2008)).

Based on the registration of the "FitPAWS" word mark and Defendants' failure to argue otherwise, this court concludes for the purpose of this ACPA claim that BDI's mark is sufficiently protected. *See USA Network*, 584 F. Supp. at 198 (citing 15 U.S.C. §§ 1057(b) and 1115(a)). Unlike the trademark claims, BDI need not establish a likelihood of confusion from the perspective of a third-party, only "an identical or confusingly similar" mark. The court finds that Plaintiff is likely to succeed in establishing that the FitPAWS URLs (fitpaws.info, fitpaws.net, fitpaws.org, fitpawsusa.biz, fitpawsusa.info, fitpawsusa.net, fitpawsusa.org, and fitpawsusa.training) are confusingly similar to Plaintiff's FitPAWS mark, as they expressly incorporate "fitpaws" and merely change the domain extension. *See Cleary*, 674 F. Supp. 2d at 1264 (citing McCarthy on Trademarks § 25:78 ("The addition in the accused domain name of generic or descriptive matter to the mark will usually not prevent a finding of confusing similarity"); *DaimlerChrysler v. The Net Inc.*, 388 F.3d 201 (6th Cir. 2004) (accused domain name "foradodge.com" is confusingly similar to the trademark DODGE for autos)).

Therefore, this court must next consider whether Plaintiff has adequately proven likelihood of success on the merits as to the element of bad faith.    As the *Cleary* court observed, the Senate Judiciary Committee in its report on the ACPA advised that the consideration of "bad faith" within the context of the statute means "intent to trade on the goodwill of another's mark."  674 F. Supp. 2d at 1264 (citing S.Rep. No. 106–140, at 9 (1999) (Conf.Rep.)).   "The ACPA enumerates nine nonexclusive factors to assist the court in determining whether the use of a trademark involves a bad faith intent to profit."  *Id.* (citing 15 U.S.C. § 1125(d)(1)(B)(i)).[6]

---

[6] These factors are set forth as:

"These factors are designed to balance the property interests of trademark owners with the legitimate interests of Internet users and others who seek to make lawful uses of others' marks, including for purposes such as comparative advertising, comment, criticism, parody, news reporting, fair use, etc." *Id.* (quoting H.R.Rep. No. 106–412, at 10 (1999) (Conf.Rep.)). Given the prior relationship between BDI and Defendants, the electronic mail correspondence between the principals of Defendants with regard to BDI, and the undisputed fact that the Parties in this action are competitors, this court concludes that Plaintiff has established a likelihood of success on the merits on the element of bad faith. Indeed, common sense suggests that the direction of

---

(I) the trademark or other intellectual property rights of the person, if any, in the domain name;
(II) the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person;
(III) the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services;
(IV) the person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name;
(V) the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site;
(VI) the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct;
(VII) the person's provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct;
(VIII) the person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, or dilutive of famous marks of others that are famous at the time of registration of such domain names, without regard to the goods or services of the parties; and
(IX) the extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous within the meaning of subsection (c) of this section.
15 U.S.C. § 1125(d)(1)(B)(i).

traffic with the use of the FitPAWS URLs to Defendants' website was for the purpose of commercial gain.   Therefore, the court concludes that Plaintiff has established a likelihood of success on the merits as to the cybersquatting claim.   *See Am. Acad. of Husband-Coached Childbirth v. Thomas,* No. 10-CV-2899-CMA-MEH, 2010 WL 5184779, at \*5 (D. Colo. Dec. 15, 2010) (finding a likelihood of success on its cybersquatting claim in recognizing that he demonstrated "effort to capitalize from [another's] Marks is exactly the type of unfair competition that the Anti–Cybersquatting Act is designed to prohibit").

The court expressly notes that its finding is based on limited evidence, certainly evidence less complete than in a trial on the merits.  *See  Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1188 (10th Cir. 2003) (citing *University of Texas v. Camenisch,* 451 U.S. 390, 395 (1981)).  And, the Federal Rules of Evidence do not apply to preliminary injunction hearings.  *See id.* (citations omitted).  BDI quoted many of the factors courts consider in determining bad faith, *see* [#41 at 11-12], and yet did not fully address or apply any of those factors to the circumstances here. Thus, the court reminds the Parties that the disposition with respect to the ACPA claim is not a disposition on the merits; liability is left for another day.

### B.  Irreparable Harm

A plaintiff establishes irreparable harm by demonstrating "a significant risk that [it] will experience harm that cannot be compensated after the fact by monetary damages."  *RoDa Drilling*, 552 F.3d at 1210 (quoting *Greater Yellowstone Coal. v. Flowers*, 321 F.3d 1250, 1258 (10th Cir. 2003)).  *See also Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982) (The grounds for injunctive relief "in the federal courts has always been irreparable injury and the inadequacy of legal remedies," and "to protect property rights against injuries otherwise

irremediable") (citations omitted).    To constitute irreparable harm, the injury cannot be speculative but "must be certain, great, actual and not theoretical." *Heideman v. South Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003) (internal quotations and citations omitted).    In addition, conclusory statements are insufficient to establish irreparable harm. *Dominion Video Satellite*, 356 F.3d at 1261.    The court must also determine if the harm is likely to take place before a ruling on the merits. *RoDa Drilling*, 552 F.3d at 1210.

BDI argues that it has "no way of knowing that all infringing websites will remain 'shut down'" or that "all websites were indeed 'shut down.'" [#41 at 14].  BDI additionally asserts that information may be "hidden" or "coded" in the www.totofit.com website that makes improper use of or otherwise infringes on BDI's marks.  [*Id.*]  BDI insists that granting the preliminary injunction "is the only way" to prevent further injury to it, and also preserve the status quo, evidence, and BDI's ability to discover relevant evidence.  [*Id.*]  Defendants respond that there is no threat of harm because they have already "shut down all relevant websites." [#43 at 7 (citing #43-1)].

The court takes at face value defense counsel's representation as an officer of the court; however, the court also ponders that without some type of order, nothing serves to prevent Defendants from reactivating the websites.[7]    While BDI does not explain why an award of monetary damages would not adequately compensate it for any damages suffered, the court nonetheless concludes that this factor weighs in favor of restoring the status quo ante in the event BDI ultimately prevails on its claims.

### C.  Balance of Equities

---

[7] To the extent that Defendants have offered to transfer the FitPAWS URLs to Plaintiff, this court will leave such transfer up to the Parties.

18

In light of the above findings, the court finds that the balance of equities tips slightly in favor of Plaintiff with respect to a preliminary injunction as to the FitPAWS URLs.  The court thus enjoins Defendants from using the FitPAWS URLs pending the outcome of this litigation, noting Defendants' willingness to cease and desist.  As for the additional relief sought by Plaintiff, this court finds that BDI has failed to carry its burden of establishing a right to such extraordinary preliminary relief, particularly given that Plaintiff seeks all (and in some cases, more than) the relief to which it would be entitled should it prevail in this action.  *See Gen. Motors Corp. v. Urban Gorilla, LLC*, 500 F.3d 1222, 1230 (10th Cir. 2007) (affirming the denial of plaintiff's motion for preliminary injunction and holding that the district court "properly considered the financial hardship to [defendant] that would result from a preliminary injunction"); *see also Buca, Inc. v. Gambucci's, Inc.*, 18 F. Supp. 2d 1193, 1211 (D. Kan. 1998) (denying a motion for preliminary injunction because the requested injunctive relief would disturb the status quo and seriously impair defendant's ability to continue operating).

### D.  Public's Interest

BDI asserts that "actual consumers and the public at large will be protected from Defendants' continued deception and misrepresentations," and by granting the preliminary injunction, the court upholds commercial ethics and prevents consumer confusion.  [#41 at 15]. Defendants do not address the question of the public's interest.  At this juncture in the proceedings, this final factor is neutral to the court's analysis.

### CONCLUSION

For the reasons set forth herein, **IT IS ORDERED** that Plaintiff Ball Dynamics International, LLC's Motion for a Temporary Restraining Order [#41] is **GRANTED IN PART**

**and DENIED IN PART**:

1. Defendants shall cease and desist from the operation of the FitPAWS URLs;

2. Defendants shall not resume any activity with the FitPAWS URLs until otherwise ordered by the court;

3. Defendants shall not obtain any other URLs including the term "FitPAWS;" and

4. All other requested relief is **DENIED**.

DATED:  December 1, 2016                         BY THE COURT:


                                                 s/Nina Y. Wang_____
                                                 United States Magistrate Judge